IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT

LARAMIE COUNTY, WYOMING

| | |
|---|---|
| E▮▮▮ G▮▮▮▮, by and through Minnie Nye, her Mother and next friend,<br><br>    Plaintiff<br>    vs.<br><br>JONATHAN ALLEN,<br>CHEYENNE POLICE DEPARTMENT,<br>CHEYENNE SOUTH HIGH SCHOOL,<br>LARAMIE COUNTY SCHOOL DISTRICT #1,<br>LOUIS SISEMORE and COLBY M. WHITE<br><br>    Defendants | Civil Action No. 153-140<br><br>**FILED**<br>OCT 03 2014<br>SANDY LANDERS<br>CLERK OF THE DISTRICT COURT |

## COMPLAINT

COMES NOW, Minnie Nye, on behalf of her daughter, and for Plaintiff's cause of action against the Defendants states and alleges as follows:

1) At all times pertinent to this Complaint, Plaintiff E▮▮▮ G▮▮▮ (E▮▮), a minor, was a citizen of Cheyenne, County of Laramie, State of Wyoming.

2) This Complaint is brought on behalf of Plaintiff E▮▮▮ G▮▮ by Minnie Nye, her mother and next friend.

3) At all times pertinent to this Complaint, Defendant Jonathan Allen was a detective with the Cheyenne Police Department in the city of Cheyenne, County of Laramie; and acting under color of state law.

4) At all times pertinent to this Complaint, Defendant Cheyenne Police Department was a governmental entity and agency or subdivision of the City of Cheyenne, County of Laramie, acting under color of state law.

5) At all times pertinent to this Complaint, Defendant Cheyenne South High School was a governmental entity in the city of Cheyenne, County of Laramie, acting under color of state law.

6) At all times pertinent to this Complaint, Defendant Laramie County School District #1 was a governmental entity in the city of Cheyenne, County of Laramie acting under color of state law.

7) Plaintiff has presented timely notices of her governmental claims to Defendants Cheyenne Police Department, Cheyenne South High School, and Laramie County School District #1.

8) At all times pertinent to this Complaint, Defendant Louis Sisemore was employed as a supervisor at Cheyenne South High School in the city of Cheyenne, County of Laramie, acting under color of state law.

9) At all times pertinent to this Complaint, Defendant Colby White was assigned to Cheyenne South High School, in the County of Laramie acting as a police officer for the Cheyenne Police Department.

10) On October 5, 2011, at Cheyenne South High School, in the city of Cheyenne, county of Laramie, E▮▮▮ was approached by C▮▮ P▮▮▮, a student, at a time when the high school was fully staffed, including the resource officer assigned to the school by the Cheyenne Police Department of the City of Cheyenne.

11) At that time, P▮▮▮ was a male of seventeen years of age and F▮▮▮ was female and fourteen years of age.

12) P▮▮▮ persuaded E▮▮▮ to accompany him to a place on school grounds, near the school, a short time before the start of classes, where they could not be seen by anyone.

13) P▮▮▮ then sexually assaulted E▮▮▮ on an area of rocks and hard ground causing bleeding to E▮▮▮, who was a virgin at the time.

14) E▮▮▮ went through school that day and then, afterwards, discussed with her older sister what had happened.

15) The next day, October 6, 2011, as advised by her sister, E▮▮▮ attempted to report the incident to Defendant Louis Sisemore, Assistant Principal of Cheyenne South High School.

16) Defendant Sisemore declined to discuss the incident and referred the matter to Defendant Colby M. White, the School Resource Officer.

17) Defendant White, at that time, was an employee of Defendant Cheyenne Police Department and assigned to be on duty at Defendant Cheyenne South High School.

18) Defendant White made no immediate effort to contact the mother of E███; but instead required E███ to write out a statement of what had happened.

19) E███ thereafter took Defendant White to the scene of the assault, showing him the location of the large rock that had been digging into her back during the attack.

20) Without attempting to question the perpetrator, Defendant White then waited for the arrival of E███'s mother.

21) When E███'s mother did arrive, Defendant White, who had still not questioned P███, attempted to persuade E███ and her mother not to follow through on the report because of the negative effect it would have on P███. Defendant White's actions denied E███ equal protection of the law under the 14th Amendment to the United States Constitution in that White refused to acknowledge the crime committed against her and, as a state official, immediately began undermining her report of a violent crime against her. Defendant White's refusal to take seriously one of the worst possible crimes ever committed at that high school and his refusal to treat P███ as a criminal discriminated against E███ based on her gender.

22) Defendant White's first interview of P███ was by telephone. P███ admitted penetration and that he "did see some blood." Defendant White continued to persist in not viewing P███'s forcible actions as a crime or even a possible crime.

23) In spite of his admission of sexual penetration, P███ said that the two of them went out behind the school to smoke marijuana.

24) Based on that statement alone, Defendant Sisemore suspended E███ from school for five days for use of marijuana; ignoring E███'s offer to take a urine test; and continuing to ignore her complaint of being raped. Defendant Sisemore, acting in his authority as assistant principal, compounded the harm done by P███ and Defendant White, and further denied E███ equal protection of the law.

25) P███ was expelled from school for bringing marijuana onto to school grounds, but received no school consequences whatsoever for the rape.

26) E███ was examined by a nurse at the Cheyenne Medical Center who noticed the blood and stated that E███ had been a virgin.

27) On October 13, 2011; eight days after the sexual assault and seven days after the first report to Cheyenne Police, P▮ was interviewed in person for the first time by Defendant Cheyenne Police Department through Defendant Allen.  Defendant Allen, acting in his authority as a Detective, compounded the harm done by P▮, Defendant White, and Defendant Sisemore, and further denied E▮ equal protection of the law. In addition, Defendant Allen failed and/or refused to follow policies put in force by the Cheyenne Police Department to protect females who have been sexually assaulted. This failure compounded the harm done by Defendant White.

28) Immediately after Allen's in person interview of P▮, Defendant Allen further violated E▮'s right to equal protection of the law by telling E▮'s mother that E▮'s sister had "convinced" E▮ that "it was rape" and that E▮ "caused this".

29) Defendant Allen thereafter pressured E▮ and her mother to sign a waiver dropping charges because to continue would "ruin" P▮'s life. As a result, E▮ and her mother reluctantly signed the waiver as they were instructed.

30) Later in October, 2011, E▮'s math teacher participated in a discussion in her class, with E▮ present, in which it was stated how much P▮ was missed, how he was a good guy, and one of their favorites. That teacher, during the discussion, looked at E▮ and, in front of the rest of the class, said "I believe every girl should live in the truth." That teacher, using her authority in front of the entire class, set in motion retaliation by other students due to E▮'s attempt to exercise her right to be free from violence due to her gender.

31) After the math class discussion, E▮ received numerous threats and negative posts on facebook.

32) The retaliation continued when E▮ was later beaten up by a female student in the hallway of the school during school hours, due to hostility about P▮ leaving, and two of E▮'s ribs were broken. No teachers came to E▮'s aid during the assault.

33) Later that day, E▮ suffered more retaliation when she was forced by her gym teacher, who knew E▮'s ribs were injured, to do exercises and to swim.

34) As a result of the continuing retaliation, before the end of the year, E▮ was ultimately transferred to Cheyenne Central High School.

35) The disparate treatment by Defendant Louis Sisemore resulting in harm to E▮'s civil rights under the 14th Amendment to the United States Constitution includes, but is not limited to, (a) his absence of compassion and his initial refusal to discuss anything at all with E▮ about the reported assault; (b) his neglect to put E▮ in touch with school counselors, school nurses,

Case 2:14-cv-00220-SWS   Document 2   Filed 11/05/14   Page 5 of 7

or anyone at the school capable of treating her with a trace of understanding; and (c) his insistence on suspending E▆▆▆ from school with <u>no</u> corroborating evidence, and in the face of her denials, and her offer to prove otherwise, based solely on the self-serving statement of the male perpetrator.

36) The disparate treatment of Defendant Cheyenne South High School and Defendant Laramie County School District #1 resulting in harm to E▆▆▆'s protected federal rights includes, but is not limited to, (a) failure to train, monitor, and supervise its employees and administrators in the treatment of sexual assault victims, most of whom are female; (b) failure to hire an administrator or employees capable of dealing with such circumstances in a professional, appropriate, and compassionate manner; (c) failure to have appropriate guidelines in place for such situations and/or failure to take the steps necessary to see that such guidelines were followed; (d) failure to train, supervise, and hire employees who understand that victims of sexual assault at any age need to be treated with compassion, need to be believed, need immediate counseling; and need to have the perpetrator properly investigated; and (e) failing to train and supervise its employees not to compound the harms to a sexual assault victim by questioning her report; and by allowing students and faculty to ratify previous insults; and by failing to protect her further from the inevitable additional negative consequences of encouraging disbelief of her report.

37) The disparate treatment of Defendant Colby M. White resulting in harm to E▆▆▆'s civil rights of equal protection of the law includes, but is not limited to, (a) requiring E▆▆▆ to write out a statement before attempting to notify E▆▆▆'s mother of the assault; (b) assuming from the beginning that the attack was consensual; (c) ignoring the location of the assault which, in itself, strongly tended to show that the assault was not consensual; (d) exhibiting an attitude that a fourteen year old girl (even, if for some unexpressed reason, she could not be believed), is capable of consent with anyone, and particularly with a much larger guy who is three years older than her; (e) increasing the harm to E▆▆▆ by not ratifying her credibility at a time when it was urgent that it be supported; (f) failing to assign E▆▆▆'s case to an officer sufficiently trained and compassionate to be helpful to a victim of an assault; (g) attempting to persuade E▆▆▆ and her mother not to follow through on a serious and dangerous criminal offense, after observing the scene, and even before questioning the perpetrator;  (h) interviewing, for the first time, the suspect of a serious and dangerous crime by telephone and (i) accepting the suspect's version of events over E▆▆▆'s even though it included admission of several of the key elements of the crime.

38) The disparate treatment of Defendant Jonathan Allen resulting in harm to E▆▆▆'s federally protected civil rights includes, but is not limited to, (a) not interviewing the perpetrator until eight days after the rape and seven days after it was reported; (b) telling E▆▆▆'s mother that E▆▆▆'s sister had convinced her she was raped and that, in fact, E▆▆▆ had "caused this"; (c) pressuring E▆▆▆ and her mother to write a statement dropping the charges; before even presenting them to the District Attorney's office; and (d) failing to send E▆▆▆ to an officer who

Exhibit 1, Page 7

was capable of showing the minimum amount compassion necessary to deal with a victim of a violent crime.

39) The disparate treatment of Defendant Cheyenne Police Department resulting in harm to E▆▆'s civil rights includes, but is not limited to, (a) assigning a Resource Officer who was incapable of dealing with a potentially dangerous event of the type incurred by E▆▆; (b) who had failed to establish a climate within the school that would lessen the likelihood of such an assault occurring; (c) who reacted in such a manner that it increased the likelihood of future assaults; (d) who in fact increased the harm to E▆▆ and others of her gender by failing to take seriously her report of a rape; (e) compounding the harm by assigning a detective to the case who responded with the same detrimental attitude as the Resource Officer; (f) failing adequately to train, supervise, and hire employees who understand that victims of sexual assault at any age need to be treated with compassion, need to be believed, need immediate counseling, and need to have the perpetrator properly investigated; and (g) further failing and neglecting to follow its own written and adopted policies for dealing with reports of sexual assault; which policies were in place for the specific purpose of protecting rape victims, most of whom are the same gender as E▆▆.

40) The actions of the Defendants, and each of them, violated E▆▆'s federal and civil rights under the Fourteenth Amendment to the United States Constitution and as protected by federal statutes 28 U.S.C.A. Section 1343(3) and 28 U.S.C.A. Section 1331.

41) As a direct and proximate result of the disparate treatment by the Defendants, and each of them, E▆▆ has sustained loss of earning capacity, serious emotional and physical injuries, and necessary and reasonable medical expenses to date; and she will be obligated in the future to expend large sums of money for necessary medical care, treatment, and services in excess of the jurisdictional minimums of this Court. She is entitled to recover special damages for these losses.

42) As a direct and proximate result of the disparate treatment by the Defendants, and each of them, E▆▆ has also incurred permanent injury and disability, pain and suffering, loss of enjoyment of life, damage to her reputation, and physical impairment and she is entitled to recover general damages for these losses.

WHEREFORE: Plaintiff respectfully requests from the Court the following relief:

a) For entry of Judgment for the Plaintiff and against the Defendants for special damages in an amount as supported by the allegations contained in this Complaint and to be established by the evidence at trial.

b) For entry of Judgment for the Plaintiff and against the Defendants for general damages in an amount as supported by the allegations contained in the Complaint and to be established by the evidence at trial.

c) For entry of Judgment for the Plaintiff and against the Defendants for Plaintiff's fees, costs, and expenses in prosecuting this action.

d) For trial by a jury of six.

e) For such other and further relief as the Court deems appropriate under the circumstances.

DATED this 2d day of October, 2014.

E███ G███, Plaintiff

By: *Robert J. Reese*
Robert J. Reese, Attorney for Plaintiff
Bar #5-1671
P.O. Box 157
Green River, Wyo. 82935
307-875-5175